DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

FRANK J. RIEBLI (CABN 221152)
SLOAN HEFFRON (CABN 285347)
Assistant United States Attorneys

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Frank.Riebli@usdoj.gov
    Sloan.Heffron@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br> v. <br> CAMERON MOORE-WILLIAMS, <br>     Defendant. | Case No. CR 19-043 YGR <br><br> [PROPOSED] <br><br> ORDER DENYING MOTION FOR RELEASE |

[PROPOSED] ORDER
CR 19-043 YGR

On May 1, 2020, the parties appeared before the Court on Cameron MOORE-Williams' motion for release from custody. After considering the parties' written submissions and oral arguments, the Court denied MOORE's motion. At the conclusion of the hearing, the Court asked the government to prepare a proposed order. Attached is that proposed order. The government apologizes for the delay in submitting the proposed order.

DATED: December 9, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

_____/s/_____
FRANK J. RIEBLI
SLOAN HEFFRON
Assistant United States Attorney

DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

FRANK J. RIEBLI (CABN 221152)
SLOAN HEFFRON (CABN 285347)
Assistant United States Attorneys

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Frank.Riebli@usdoj.gov
    Sloan.Heffron@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | ) Case No. CR 19-043 YGR |
|---|---|
| Plaintiff, | ) |
| v. | ) [PROPOSED] |
| CAMERON MOORE-WILLIAMS, | ) ORDER DENYING MOTION FOR RELEASE |
| Defendant. | ) |

    On April 27, 2020, Defendant filed a Motion for Pretrial Release Due to COVID-19 (Dkt #230). The government filed its opposition brief on April 30, 2020 (Dkt #234), and the Court heard the matter on May 1, 2020. After considering the parties submissions and their arguments at the hearing, and for the reasons set forth below, the Court DENIED Defendant's motion at the conclusion of the hearing. The Court directed the government to prepare a proposed order memorializing that decision. Having now received the government's submission, the Court issues this order.

### I.    LEGAL STANDARD

    A defendant who has been detained – as Defendant has here – may seek temporary release from custody if a "compelling reason" exists that warrants his release. 18 U.S.C. § 3142(i). In the context of

the COVID-19 pandemic, courts around the country have tended to consider four factors in determining whether the possibility of contracting COVID-19 in jail warrants release: (1) the original grounds for detention; (2) the specificity of the defendant's COVID-19 concerns; (3) the extent to which the proposed release plan mitigates the COVID-19 risks to the defendant; and, (4) the likelihood that release would increase COVID-19 risks to others. See, e.g., United States v. Cazares, N.D. Cal. Case No. CR 18-466 BLF (Dkt #351 Apr. 23, 2020) (collecting cases).[1] It is Defendant's burden to show that temporary release is necessary under Section 3142(i). United States v. Dupree, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011).

## II. DISCUSSION

### A. The Original Grounds for Detention.

The Court originally released Defendant on a $75,000 bond, co-signed by his sister, on the condition that he reside in a halfway house. Dkt #93. A month after his release, Pre-Trial Services filed a Form 8 violation memo (Dkt #114) indicating that Defendant had violated the halfway house's rules by bringing food back to his room and then becoming confrontational – allegedly yelling at the staff to "get the fuck out of [his] room." Pre-Trial expressed its concern and noted that it might recommend remand if the halfway house terminated Defendant. At the hearing on that violation, the Court allowed Defendant to remain out of custody.

Two weeks later, Defendant again violated the halfway house's rules. He returned from a mental health counseling appointment almost two hours later than scheduled. When the halfway house staff

---

[1] Those factors are The Bail Reform Act of 1984 permits pretrial detention where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Court considers four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986). The government bears the burden of proving a danger to the community by clear and convincing evidence and a flight risk by a preponderance of the evidence. 18 U.S.C. § 3142(f)(2)(B); United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985).

confronted MOORE about his tardiness, he stated that he no longer wanted to live there and preferred to just go into custody.  The Court remanded him on July 2, 2019.  See Dkt #127.  Thus, MOORE was only out of custody for two months before being remanded back into custody because of his unwillingness or inability to follow the Court's instructions.

The Court notes that, in this case, there was (and is) a presumption of detention because Defendant is charged with a drug trafficking offense that carries a maximum sentence longer than 10 years.  18 U.S.C. § 3142(e).  The government proffers that Defendant was involved with a group that operated an open-air drug market in East Oakland, and that Defendant was armed on at least one occasion.  The government further proffers that Defendant there is strong evidence against Defendant, including pole camera and undercover video, wire intercepts, and social media posts indicating Defendant's involvement in the conspiracy.  The government argued that it had conducted a reverse proffer with Defendant and showed him all the evidence it had against him, as well as its calculation of his sentencing exposure.

Moreover, Defendant has violated at least five prior grants of probation and was on probation when he is alleged to have committed the offense charged in this case.  He was arrested on the federal warrant in this case when police caught him and others allegedly in the act of burglarizing a business.

**B.    The Specificity of Defendant's COVID-19 Concerns.**

Defendant's primary argument is that he is concerned about contracting COVID-19 while in custody.  He admits however, that he does not have any of the health conditions that the Centers for Disease Control & Prevention have identified as increasing the risk of serious illness in those who contract COVID-19.  To the contrary, he is young and healthy.

Defendant also argues that the current conditions of confinement have "gutted" his Sixth Amendment right to counsel.  A defendant has constitutional rights to assistance of counsel and meaningful access to courts.  United States v. Wilson, 690 F.2d 1267, 1271 (9th Cir. 1982).  But there are many permissible means of achieving those objectives.  Id.  The Court notes that, although the jail has suspended contact visits, it still permits telephone calls and video-conferences with attorneys.  Further, attorneys may visit their client in-person in special rooms with glass dividers between the attorney and client.  Though these options may not be ideal, there has not been the "complete

disruption" of the attorney-client relationship Defendant claims. Moreover, even if Defendant and his attorneys were to meet in person, they would have to do it from a distance of at least six feet in order to maintain appropriate social distance.

### C. Whether Defendant's Release Plan Mitigates His COVID-19 Risk.

Defendant argues that he is more likely to contract COVID-19 in custody than he is if he is released to his mother's care. The Court notes however, that the relative risks he faces depend in large part on his willingness and ability to follow public health rules. Defendant has not demonstrated that he can or will comply with the Court's rules in this case or in the prior cases where he violated probation. This concern is particularly salient here because Defendant does not have a health condition that might cause him to be more cautious.

### D. Whether Defendant's Release Plan Increases the Risks to Others.

For the reasons stated above, ordering Defendant's release may increase the risk he poses to his mother. It will also add to the risks that Pre-Trial Services officers would face in their efforts to supervise him.

## III. CONCLUSION

For all of these reasons, the Court finds that Defendant has not met his burden to demonstrate compelling circumstances warranting his release from custody. Accordingly, is motion is DENIED.

DATED: December _____, 2020

_____
HON. KANDIS A. WESTMORE
United States Magistrate Judge