JULIA M. JAYNE (State Bar No. 202753)
Email: *julia@jaynelawgroup.com*
ASHLEY RISER (State Bar No. 320538)
JAYNE LAW GROUP, P.C.
483 9th Street, Suite 200
Oakland, Ca 94607
Telephone: (415) 623-3600
Facsimile: (415) 623-3605

Attorneys for Defendant
CAMERON MOORE-WILLIAMS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 19-043 YGR |
| Plaintiff, | CAMERON MOORE-WILLIAMS' SENTENCING MEMORANDUM IN SUPPORT OF MANDATORY MINIMUM SENTENCE AND RDAP REFERRAL |
| v. | |
| CAMERON MOORE-WILLIAMS | Date:   February 5, 2021 |
| Defendants. | Time:  2:00 PM |
| | Judge:  Hon. Yvonne Gonzalez Rogers |

## NOTICE

TO THE HONORABLE COURT AND TO ALL PARTIES:

PLEASE TAKE NOTICE that on February 5, 2021 at 2:00 PM or as soon as this matter may be heard on Zoom, in the above entitled Court located at 1301 Clay Street, Oakland, CA 946121, the Defendant, Cameron Moore-Williams, will enter a "guilty" plea to Count 2 of the Superseding Indictment. Dkt. 131. After his change of plea hearing, he will stand before this Court, again, on Zoom, for judgment and sentencing.

In advance of this date, Mr. Moore-Williams respectfully submits this Sentencing Memorandum. Mr. Moore-Williams requests that this Court follow the Presentence Report recommendation that he is sentenced to 60 months of imprisonment and referred to the Bureau of Prisons' Residential Drug Abuse Treatment Program.

# TABLE OF CONTENTS

INTRODUCTION

DISCUSSION

I.      Procedural and Factual Background                                              1

    A.  Procedural History and Background                                     2

    B.  Mandatory Minimum                                                    2

    C.  United States Sentencing Guidelines' Calculations                    2

II.     Objections to the Presentence Report                                          2

    Paragraph 43                                                          2

        1. Phone calls and texts                                       3

        2. December 12, 2018 arrest of Paul Rivera                     4

    Paragraph 44: Specific Offense Characteristics                        4

        1. Firearm not connected with offense conduct                 4

        2. Mr. Moore-Williams was not seen distributing drugs on January 31, 2018    5

    Paragraph 46: Role in the Offense                                     6

    Paragraph 58-61: Criminal History Category is Overstated              7

    Sentencing Recommendation, Page 1                                     7

III.    Personal History and Characteristics                                          7

    A.  Family                                                               7

    B.  Mental and Physical Health                                          8

    C.  Drug and Alcohol Use                                                8

    D.  Educational and Professional Background                             9

IV.     Mr. Moore-Williams should be sentenced to the mandatory minimum prison term of      10
        five years

    A.  The United States Sentencing Guidelines do not support a sentence above the    10
        mandatory minimum

    B.  Section 3553(a)'s sentencing factors support imposing no greater than the    11
        mandatory minimum

CONCLUSION                                                                            12

1

**TABLE OF AUTHORITIES**

2

**CASES**

3 *Gall v. United States*, 128 S. Ct. 586 (2007)     10

4 *Kimbrough v. United States*, 128 S. Ct. 558 (2007)     10

5 *Koon v. United States*, 518 U.S. 81 (1996)     11

6 *Rita v. United States*, 551 U.S. 338 (2007)     11

7 *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008)     10, 11

8 *United States v. Gomez*, 215 F. App'x 200 (4th Cir. 2007)     12

9 *United States v. Mendoza*, 121 F.3d 510 (9th Cir. 1997)     12

10 *United States v. Miller*, 890 F.3d 317 (D.C. Cir. 2018)     5

11 *United States v. Paul*, 239 F. App'x 353 (9th Cir. 2007)     12

12 *United States v. Perez*, 962 F.3d 420 (9th Cir. 2020)     3

13 *United States v. Pineda*, 981 F.2d 569 (1st Cir. 1992)     5

14

**STATUTES**

15 18 U.S.C. § 3553(a)     10, 11

16

**U.S. SENTENCING COMMISSION GUIDELINES**

17 USSG § 3B1.2     6

18 USSG § 3B1.2(b)     6

19 USSG §2D1.1     2, 11

20 USSG §2D1.1(b)(1)     2, 4, 5, 11

21 USSG §3E1.1(a)     2

22 USSG §3E1.1(b)     2

23

24

25

26

27

28

**SENTENCING MEMORANDUM**

The Defendant, CAMERON MOORE-WILLIAMS, through counsel, Julia M. Jayne and Ashley Riser, submits this Sentencing Memorandum in support of his request for a sentence of sixty months and a Court referral to the Residential Drug Abuse Treatment Program. This sixty-month sentence is the mandatory minimum for the charged offense conduct.

**INTRODUCTION**

Cameron Moore-Williams is a serious and thoughtful young man with dreams of opening a successful chain of California-based coffee shops. In his spare time, he reads books dedicated to entrepreneurship and business. Unfortunately, this young man is not the version that the Court or the Government or, sadly, even most people see. Instead, they see someone in jail for a drug offense and they treat him as such.

Thus, this Sentencing Memorandum has two goals: (1) to properly introduce the Court, Government, and the community to Cameron Moore-Williams; and (2) to advocate for the imposition of the mandatory minimum sentence for the charged offense and a Court recommendation to the Bureau of Prisons' Residential Drug Abuse Treatment Program, or RDAP. This sentence, as recognized in the Presentence Investigation Report, is an appropriate and pragmatic one because it furthers 18 U.S.C. § 3553(a)'s sentencing goals, including deterrence and rehabilitation. On the other hand, a sentence beyond the mandatory minimum will not do so and thus should be avoided.

**DISCUSSION**

**I.    Procedural and Factual Background**

Mr. Moore-Williams will enter a guilty plea to Count 2 of the Superseding Indictment, Dkt. 131, on February 5, 2021 at 2:00 PM. The Superseding Indictment alleges that Mr. Moore-Williams, as a member of a conspiracy, was involved in the distribution of 28 grams or more of a mixture and substance containing cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B). *Id.*

The Superseding Indictment alleges no other offenses against Mr. Moore-Williams.

### A.      Procedural History and Background

An Indictment, filed January 2019, and a Superseding Indictment, filed in July 2019, allege a single violation of 21 U.S.C. § 846, 841(a)(1) and (b)(1)(B), Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base and Cocaine. At his May 2019 detention hearing, the Court released Mr. Moore-Williams with conditions, including residence at a Tenderloin-based halfway house. He was remanded into custody in July 2019 after violating the terms of his release. He has remained in custody ever since.

### B.      Mandatory Minimum

Mr. Moore-Williams' plea to 21 U.S.C. § 846, 841(a)(1) and (b)(1)(B) triggers a five-year mandatory minimum term of imprisonment. Still, because the Government may recommend a sentence beyond that to account for conduct outside the charged offense, and because of a disagreement with the appropriate guideline level, defense counsel has addressed sentencing under the United States Sentencing Guidelines, too.

### C.      United States Sentencing Guidelines' Calculations

Defense counsel contends that Mr. Moore-Williams' Sentencing Guidelines' calculation should be as follows:

| | | |
|---|---|---|
| Base Offense Level | 24 | §2D1.1 |
| Specific Offense Characteristics | 0 | §2D1.1(b)(1) |
| Role in the Offense | -2 | |
| Acceptance | -3 | §3E1.1(a), §3E1.1(b) |
| **Total** | **19** | |

Further, as analyzed below, Mr. Moore-Williams Criminal History should be Category I, thus leading to a guideline range of **30-37 months**.

Defense counsel's bases for this number is below, in the *Objections to the Presentence Report*.

## II.      Objections to the Presentence Report

*Paragraph 43*

Defense counsel objects to the drug quantity attributed to Mr. Moore-Williams because he is pleading guilty to Count 2 of the Superseding Indictment. According to this charging document, as a

CAMERON MOORE-WILLIAMS' SENTENCING MEMORANDUM
CR 19-043 YGR

2

1  member of the conspiracy, he is responsible for at least 28 grams of cocaine base. The Superseding

2  Indictment does not allege, nor does Mr. Moore-Williams admit to, more than this amount.

3       There is also insufficient evidence to support the probation officer's proposed Base Offense

4  Level and Total Offense Level. The evidence is insufficient because: (1) Mr. Moore-Williams' presence

5  at 200 Makin Road is based, in part, on circumstantial extrapolation from phone calls and texts between

6  Paul Rivera and Daniel James, and (2) the Government derived the alleged quantity sold per day from a

7  single arrest that Mr. Moore-Williams was not present for. Because of these deficiencies, the

8  Government cannot establish by a preponderance of the evidence the drug quantity alleged in the PSR.

9  *See e.g.*, *United States v. Perez*, 962 F.3d 420, 448 (9th Cir. 2020) (rejecting appellants' arguments that

10  trial court erred by not adopting clear and convincing standard instead of preponderance of evidence for

11  drug quantity).

12      1.  Phone calls and texts

13       The Probation Department and the Government estimate, for purposes of Guidelines

14  Calculations, that Mr. Moore-Williams dealt drugs on six days as part of the conspiracy. This estimate

15  comes primarily from the following:

16  | Sep. 8, 2017 | Pole camera |

17  | Nov. 21, 2017 | Video of Confidential Informant |
    | Nov. 15, 2018 | Mr. Rivera texted Mr. James |

18  | Nov. 19, 2018 | Mr. Moore-Williams used Mr. Rivera's phone to call Mr. James |

19  | Dec. 6, 2018 | Mr. Rivera texted Mr. James to bring half an ounce for Mr. Moore-Williams |
    | Dec. 8, 2018 | Mr. Rivera texted Mr. James to bring half an ounce for Mr. Moore-Williams |

20

21      Thus, at least half of the instances that Mr. Moore-Williams is alleged to have been present – and

22  the resulting drug quantity – turn on communications that Mr. Moore-Williams did not participate in and

23  that are not verified by observations or physical evidence. There is no evidence that Mr. Moore-

24  Williams directed Mr. Rivera to make these calls or texts, and there is no evidence that he knew that

25  these calls were made, or texts were sent. Nor is there evidence he agreed or carried out the topic of their

26  discussions. Finally, the drug quantity discussed in each of these communications is not an ounce; the

27  reference is usually half an ounce or an eighth of an ounce.

28

CAMERON MOORE-WILLIAMS' SENTENCING MEMORANDUM
CR 19-043 YGR

2.  December 12, 2018 arrest of Paul Rivera

The government estimates that Mr. James' operation was responsible for one ounce of cocaine sales per day shift on Makin Road. Not every co-conspirator was involved the same number of days, and the evidence as to each co-conspirator differs in terms of the government's estimation of how often they were out on the street selling. For Mr. Moore-Williams, the government alleges that it can prove he sold drugs on at least six days (discussed above).

Further, the government's estimate of 28 grams, or one ounce, of cocaine base per shift does not come from a daily seizure of this quantity. Instead, it comes from an extrapolation of a seizure on December 12, 2018 – a day that Mr. Moore-Williams was *not* observed in the area. This particular arrest – of Paul Rivera – led to the seizure of 14.2 grams of cocaine base. From this quantity, the government has now estimated that each defendant, including Mr. Moore-Williams, must have sold at least an ounce each time they were on the street. This extrapolation is speculative – it does not come from witness testimony, from physical observations, or from any admissions. It is equally possible that Mr. Moore-Williams – even assuming the six days – sold less than an ounce per shift. Indeed, this conclusion is supported by a phone conversation allegedly referencing a half or an eighth of an ounce of cocaine base.[1] Ultimately, Mr. Moore-Williams notes the flaws in the estimation, but admits that he sold at least 28 grams of cocaine base over the course of the conspiracy.

*Paragraph 44: Specific Offense Characteristics*

Defense counsel objects to the application of USSG §2D1.1(b)(1)'s two-level enhancement because Mr. Moore-Williams' alleged firearm possession was not connected to the offense (here, conspiracy to distribute drugs).

1. Firearm not connected with offense conduct

USSG §2D1.1(b)(1)'s enhancement applies when someone possesses "a weapon *in connection* with a drug offense." (Emphasis added.) In other words, "before applying a firearms enhancement, a nexus must be shown between the weapon and the criminal act." *United States v. Miller*, 890 F.3d 317,

---

[1] According to the PSR, Mr. Moore-Williams allegedly called Mr. James on November 19, 2018 and said, "instead of a quarter, bring half a 8-ball." PSR ¶ 28 (internal quotations omitted).

CAMERON MOORE-WILLIAMS' SENTENCING MEMORANDUM
CR 19-043 YGR

4

328 (D.C. Cir. 2018) (holding that district court erred when it imposed enhancement without factual findings on connections between firearms and drug convictions) (internal citations and quotations omitted).

Courts have traditionally held that "there will be sufficient evidence to connect the weapons to the offense conduct" "when the weapon's location makes it readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business..." *United States v. Pineda*, 981 F.2d 569, 573 (1st Cir. 1992). Here, Mr. Moore-Williams did not have ready access to the gun – as the PSR states, he had to walk around the block to get the gun. PSR ¶ 32. Because the gun was not readily available to purportedly protect the participants or the proceeds of the offense conduct, it could not be "connected" to the offense. After all, if there was a dispute about the narcotics, a firearm would not be particularly useful if it was a block away.

Furthermore, the allegation that the weapon was "connected" to the drug distribution based on general neighborhood proximity is too speculative to include as an enhancement. While the government often alleges that a defendant possesses firearms to protect their drugs or themselves during drug deals, Mr. Moore-Williams, however, is alleged to have *sold* a gun. Meaning, if he needed protection, he wouldn't have sold it. It could have been an independent transaction purely for financial gain. And indeed, the gun at issue was in a vehicle *not* typically associated with the alleged drug activity. A gun sale in the vicinity or neighborhood where drugs are sold does not necessarily mean that the gun has any connection to drug sales.

Finally, according to the USSG §2D1.1(b)(1) use notes, the enhancement applies when the weapon is present during the offense "unless it is clearly improbable that the weapon was connected to the offense." Here, it appears that the alleged firearm transaction was independent of a drug transaction when it occurred and therefore, should not be considered "connected" with the offense of selling drugs.

2. <u>Mr. Moore-Williams was not seen distributing drugs on January 31, 2018</u>

The Government and PSR state that Mr. Moore-Williams sold drugs on six days, none of which are January 31, 2018, the day that he is alleged to have sold a gun. PSR ¶ 36. There is no evidence that Mr. Moore-Williams sold drugs on this day, too. And since the government observed him on this day,

they likely would have observed him selling drugs, if he had done so. As a result, it is improbable that Mr. Moore-Williams possessed a dangerous weapon in connection with drug trafficking on a day he was not present to engage in said conduct.

*Paragraph 46: Role in the Offense*

Defense counsel objects to the PSR's adjustment for role in the offense, including both the reasons and subsequent justification for not adjusting for a minor role reduction. Defense counsel contends that a <u>minor role</u> adjustment under USSG § 3B1.2(b) is appropriate because Mr. Moore-Williams is "substantially less culpable than [the] average participant" in the alleged conspiracy. USSG § 3B1.2, comment. (n.3(A)). Under USSG § 3B1.2's application notes, these factors warrant this adjustment:

- Mr. Moore-Williams did not plan or organize the alleged criminal activity. Instead, Daniel "James was in control of the sale of drugs and firearms" and Paul Rivera "ran the day shift." PSR ¶ 18.

- Mr. Moore-Williams' role as a "street seller on at least six different days" (according to the PSR) supports a minor role adjustment. Six days out of a conspiracy stretching more than one year is minor involvement. PSR ¶ 46, n. 2.

- Mr. Moore-Williams' role in Mr. James' operation was minor, when compared to the operation's senior figures. The "ringleaders" of the criminal activity conspired to distribute guns, in violation of 18 U.S.C. § 371, conspired to sell 280 grams or more of a cocaine base mixture, sold guns without a license several times, unlawfully possessed guns as a felon, and individually sold a mixture of cocaine base several times. Dkt. 131. In comparison, Mr. Moore-Williams allegedly sold a mixture of cocaine base on a handful of days. But he did not know who Mr. James bought drugs from, he did not direct or otherwise organize the sale of drugs/firearms, and he wasn't even present on the day that law enforcement seized drugs from Mr. Rivera.

As a result, a two-point downward adjustment is appropriate.

1

2 *Paragraph 58-61: Criminal History Category is Overstated*

3    The PSR attributes one criminal history point to a misdemeanor marijuana conviction from 2016,

4 when Mr. Moore-Williams was 22 years old. Though the conviction involved less than an ounce of

5 marijuana, Mr. Moore-Williams was placed on three years court probation (resulting in two extra

6 criminal history points). Less than a month after this conviction, the Adult Use of Marijuana Act was

7 passed which legalized the adult possession of less than an ounce of marijuana. Mr. Moore-Williams'

8 conviction was not vacated by his public defender, even though a process of petitioning to vacate the

9 conviction was available in Alameda County by 2018. As a result, Mr. Moore-Williams contends that

10 his criminal history – enhanced by three points as a result of the marijuana conviction – **is overstated**.

11 After all, if the misdemeanor conviction for less than an ounce of marijuana was not counted, then Mr.

12 Moore-Williams' subtotal criminal history score would be one (as the term of probation may not count,

13 either). Mr. Moore-Williams intends to seek a petition to vacate the marijuana conviction but urges this

14 Court, in the meantime, to conclude that a more accurate reflection of his criminal history is Category I.

15    *Sentencing Recommendation, Page 1*

16    The Superseding Indictment, to which Mr. Moore-Williams is entering a plea, states that the

17 alleged drug conspiracy occurred between October 2017 - not September 2017 as written in the

18 sentencing recommendation - and continued through January 10, 2019. Dkt. 131, ¶4. This should be

19 corrected.

20 **III.    Personal History and Characteristics**

21    **A.    Family**

22    Mr. Moore-Williams grew-up in a single parent household. His mother, Pamela Williams,

23 worked multiple jobs because of her fierce determination to ensure that her three children did not need

24 public benefits and moreover, were taken care of. This was difficult and meant that she was not always

25 home when Mr. Moore-Williams returned from school, but fortunately, he was never alone. PSR ¶ 70.

26 Instead, his two sisters, Candis Smith and Janae Williams, were always there to supervise him and

27 provide him with company. PSR ¶ 70. As a result, Mr. Moore-Williams developed a close relationship

28

1  with both sisters, something he maintains to this day, despite being in custody. He is also extremely

2  close with his mother, and they talk on the phone at least once a week.

3  Mr. Moore-Williams was also remarkably close to his maternal grandparents, Bernice and Curtis

4  Williams. PSR ¶ 72. Eventually, this familial bond transformed into a professional one: as they grew

5  older, he provided both full-time care as a paid In-Home Supportive Services, or IHSS, provider. PSR ¶

6  72. He stopped working as a paid IHSS provider only upon his grandfather's death in 2019. PSR ¶ 72.

7  Of course, being the only young male in this environment was hard for him. Because his dad was

8  not around, Mr. Moore-Williams did not have the male companionship and company he needed. So, he

9  turned to those he knew: his friends from school, including Paul Rivera. *See, e.g.*, PSR ¶¶ 41, 75. This

10  gave him the companionship, friendship, and community he so desperately needed and wanted. Of

11  course, this came at a cost – Mr. Moore-Williams will spend the next five years in prison.

12  Sadly, Mr. Moore-Williams' story is not unique: since the introduction of crack cocaine to cities

13  and towns just like Oakland, young men have banded together to eke out a living based on this

14  poisonous substance. To be clear, defense counsel is not arguing that Mr. Moore-Williams did not have

15  a part in the proliferation of this substance in our communities. And yet, despite that, Mr. Moore-

16  Williams is a casualty of both the drug and the nation's catastrophic failure in the "War on Drugs."

17  **B.    Mental and Physical Health**

18  Mr. Moore-Williams was diagnosed with depression in 2012, and he was prescribed Seroquel to

19  treat it. PSR ¶ 83. He was also prescribed Xanax to address his depression and anxiety. At Santa Rita

20  Jail, he was prescribed sleeping medication, but the jail stopped giving him the medication after a few

21  months. PSR ¶ 86. Unfortunately, Santa Rita Jail has not adequately addressed Mr. Moore-Williams'

22  needs. As he explained during the PSR interview, he did not feel comfortable with the counselor because

23  the counselor was often rushed. This is particularly frustrating because Mr. Moore-Williams has

24  benefitted from counseling in the past, including in juvenile proceedings and that ordered by Pretrial

25  Services. PSR ¶ 86.

26  **C.    Drug and Alcohol Use**

27  Mr. Moore-Williams does not regularly drink alcohol, but he used and abused both marijuana

28

1   and Xanax, and sometimes, he combined both with cough syrup. PSR ¶ 90. He started early: as the PSR

2   conveys, he started smoking marijuana in elementary school and became a daily user by middle school.

3   PSR ¶ 89. While it is always difficult to "to get off drugs without help," PSR ¶ 91, this lengthy history

4   makes it that much harder. During the time of the offense, Mr. Moore-Williams' was not in a healthy

5   place: he was abusing drugs and alcohol and not getting any sort of mental health or drug counseling. He

6   was on a destructive path, which he is grateful to have been saved from.

7          Ultimately, at the time of the alleged offense, Mr. Moore-Williams was obviously suffering: he

8   was not receiving treatment for his depression or anxiety, and he reported instances of feeling bugs

9   crawling on his skin. PSR ¶ 84. With ongoing mental health and drug treatment, Mr. Moore-Williams

10  will never be in such a vulnerable and unstable position again. He understands that his drug use was an

11  attempt to get away from past trauma, such as knowing friends who died at the hands of street or police

12  violence. He now understands that this is not the path towards prosperity; instead, it is only through hard

13  work and determination – both of which he has in abundance – that he can succeed.

14          **D.      Educational and Professional Background**

15          Mr. Moore-Williams has a high school diploma. PSR ¶ 92. This was a hard fought victory: in

16  elementary school, he was diagnosed with dyslexia, and by the third grade, he had an Individualized

17  Education Program, or IEP. PSR ¶ 93. As he grew older, he became frustrated with school, especially

18  English, and eventually, dropped out of high school. PSR ¶ 93. Yet, he eventually returned to school and

19  successfully completed his high school education. PSR ¶ 92.

20          In fact, it was while getting his high school diploma in Texas that Mr. Moore-Williams realized

21  that he loved the rural countryside, which why he is eager to move to the San Joaquin Valley or

22  Stanislaus County upon his release. He also plans to start his own business; he wants to open a chain of

23  coffee shops, replete with the laidback California vibe he loves and dog-friendly patio seating. While

24  this idea has percolated for some time, it was only after being incarcerated that he decided to

25  wholeheartedly focus on this goal. Admittedly, this will be difficult, but he has faith that he will succeed

26  because of his drive and future educational opportunities. Until he's able to attend academic

27  programming through the Bureau of Prisons, Mr. Moore-Williams has worked towards this goal

28

CAMERON MOORE-WILLIAMS' SENTENCING MEMORANDUM
CR 19-043 YGR

individually; while in custody, he reads books devoted to business - in fact, he recently finished reading Tim Berry's *Hurdle: The Book on Business Planning*. This individual drive and determination shows the Court and the world that Mr. Moore-Williams is a smart and capable young man who will achieve his personal and professional goals.

### IV.   Mr. Moore-Williams should be sentenced to the mandatory minimum prison term of five years.

Mr. Moore-Williams' open plea to Count 2 triggers a five-year mandatory minimum prison term. Because this is already a significant sentence for a first-time federal offender, Mr. Moore-Williams asks this Court to adopt the PSR's recommended sentence – sixty months – for the offense conduct. This sentence reflects congressional intent, the seriousness of the offense, and Mr. Moore-Williams' lack of an adult criminal record. On the other hand, sentencing Mr. Moore-Williams to more than the mandatory minimum based on specious drug quantity calculations or an alleged firearm transaction questionably connected to drug trafficking would defeat congressional intent, including § 3553(a)'s sentencing purposes. In Defendant's analysis, the five-year sentence exceeds his appropriate sentencing guideline level. But because the government and probation's proposed applicable guideline range exceeds the offense's mandatory minimum sentence, defense counsel briefly addresses the Guidelines and 18 U.S.C. § 3553(a)'s sentencing factors below.

### A.   The United States Sentencing Guidelines do not support a sentence above the mandatory minimum.

When calculating the appropriate sentence, courts should calculate the applicable Guideline range and "should then consider all of the [18 U.S.C.] § 3553 (a) factors..." *Gall v. United States*, 128 S. Ct. 586, 596-597 (2007). That said, courts are free to disagree with the Guidelines range and stated policy considerations. *Kimbrough v. United States*, 128 S. Ct. 558 (2007). Further, this range is not presumptively reasonable. Instead, the court "must make an individualized assessment." *Gall*, 128 S. Ct. at 596-597. Stated another way, "[w]hile the Guidelines are to be respectfully considered, they are one factor among the § 3553(a) factors ... to be taken into account in arriving at an appropriate sentence." *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) (en banc). This discretion reflects the "federal judicial tradition" that allows "the sentencing judge to consider every convicted person as an individual

CAMERON MOORE-WILLIAMS' SENTENCING MEMORANDUM
CR 19-043 YGR

10

and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id*. at 598 (citing *Koon v. United States*, 518 U.S. 81, 113 (1996). For that reason, under *Carty*¸ this Court should consider the applicable Guideline range while also considering Mr. Moore-Williams as an individual entitled to consideration of § 3553(a)'s sentencing factors.

The PSR calculates Mr. Moore-Williams' guideline imprisonment range as 70 – 87 months. PSR ¶ 101. This recommendation depends on the improper application of these factors:

- Base Offense Level (USSG §2D1.1)
- Specific Offense Characteristics (USSG §2D1.1(b)(1))
- Adjustment for Role in the Offense
- Total Offense Level
- Criminal History Category

But this range is improperly calculated because of the speculative drug quantity calculation and the improper application of the dangerous weapons enhancement under §2D1.1(b)(1), as discussed above.

For these reasons, as well as § 3553(a)'s sentencing factors, Mr. Moore-Williams requests the Court to impose the PSR's recommended sentence of 60 months, as well as a referral to the Residential Drug Abuse Treatment Program, or RDAP.

**B.**     **Section 3553(a)'s sentencing factors support imposing no greater than the mandatory minimum.**

"(S)ection 3553(a) authorizes a sentencing judge to consider" the defendant's specific characteristics, such as "age, education, mental, or emotional condition[s] ... lack of guidance ... [and] family ties..." *Rita v. United States*, 551 U.S. 338, 364-365 (2007) (Stevens, J., concurring). These include:

- **Punished by collateral consequences,** including loss of benefits, entitlements, and citizen rights; loss of financial stability; and loss of employment opportunities. Once released, Mr. Moore-Williams will struggle to re-integrate into his community – five years is a long time to be

CAMERON MOORE-WILLIAMS' SENTENCING MEMORANDUM
CR 19-043 YGR

away – and he will struggle to find meaningful employment as he works towards launching his own business.

- **No control over the amount, type, or purity of drugs.** *See, e.g.*, *United States v. Mendoza*, 121 F.3d 510 (9th Cir. 1997) (defendant did not know or control the amount or purity of the drugs). Mr. Moore-Williams did not know who the conspiracy's leaders bought drugs or firearms from, and he did not control or know the purity of said drugs.

- **Prison has greater significance for those imprisoned for the first time**. *See, e.g.*, *United States v. Paul*, 239 F. App'x 353 (9th Cir. 2007). The longest Mr. Moore-Williams has spent in jail is 7 days. PSR, Sentencing Recommendation 2.

- **Defendant's lesser role in the alleged conspiracy**. *See, e.g.*, *United States v. Gomez*, 215 F. App'x 200 (4th Cir. 2007).

Finally, the mandatory minimum sentence – and not the greater estimated guideline range suggested by Probation – is sufficient, but not greater than necessary, to further § 3553(a)'s sentencing goals. A mandatory minimum sentence, for someone like Mr. Moore-Williams, reflects the seriousness of the offense: before being remanded into custody, the longest he ever spent in jail was seven days. PSR ¶ 58. This sentence will also deter future conduct; again, Mr. Moore-Williams is not a serial offender with multiple prison stints in his record. Instead, he is a young man who has served jail time for misdemeanors, and even as a juvenile, he was sentenced to probation, not prison.

While in custody, Mr. Moore-Williams will also have access to needed vocational and education opportunities, including business courses that will allow him to launch a successful coffee shop chain. During this time, he will also have access to other needed treatment, including drug counseling.

## CONCLUSION

The imposition of a mandatory minimum sentence is, as the PSR recognizes, an appropriate and weighty one for a first-time federal offender like Cameron Moore-Williams. This sentence and the Court's referral to RDAP will allow Mr. Moore-Williams to obtain both the treatment and resources he needs. On the other hand, a sentence beyond the five years will defeat § 3553(a)'s sentencing purposes.

1    Respectfully Submitted,

2    DATED: January 29, 2021                    /AER/

3                                               Ashley Riser
4                                               Julia Mezhinsky Jayne
                                                Counsel for CAMERON MOORE-WILLIAMS
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CAMERON MOORE-WILLIAMS' SENTENCING MEMORANDUM
CR 19-043 YGR