DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

SLOAN HEFFRON (CABN 285347)
FRANK J. RIEBLI (CABN 221152)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    Sloan.Heffron@usdoj.gov
    Frank.Riebli@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 19-00043-07 YGR |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | Date: February 5, 2021<br>Time: 2:00 p.m. |
| CAMERON MOORE-WILLIAMS, | |
| Defendant. | |

**I.    INTRODUCTION**

Defendant Cameron Moore-Williams ("Moore") is scheduled to appear before the Court for a consolidated change of plea and sentencing hearing, at which he is expected to plead guilty to Count Two of the captioned Superseding Indictment. Moore has advised that he will enter his guilty plea without a plea agreement with the government. In Count Two, Moore is charged with conspiracy to distribute and possess with intent to distribute 28 grams or more of a mixture and substance containing cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B).

The United States respectfully recommends that the Court sentence Moore to a low-end Guidelines term of 70 month' imprisonment and four years of supervised release with an expanded

suspicionless search condition, as well as each of the terms and conditions recommended by U.S. Probation.

## II.   OFFENSE CONDUCT

Between mid-2017 and January 2019, federal and local law enforcement investigated a gun and drug trafficking network that operated on and around the 200 Block of Makin Road in East Oakland, California.  Presentence Investigation Report ("PSR") ¶¶ 16-17.  This open-air marketplace for guns and drugs operated day and night.  *Id.* ¶ 18.  The investigation revealed that co-defendant Daniel James led this network, and that various individuals—including several defendants charged in the captioned Superseding Indictment—worked in shifts for James on Makin Road.  *Id.*  In the course of the investigation, James and his associates on Makin Road sold a confidential informant (the "CI") 34 firearms, at least 45 ounces of powder cocaine, over 19 ounces of cocaine base, and over 50 suspected hydrocodone pills.  *Id.* ¶ 17.  An undercover agent also purchased a firearm.  *Id.*  Beyond the sales to the CI, the government estimates that James and his associates distributed at least 12 kilograms of cocaine base over a 15 month period.

Co-defendant Paul Rivera[1] managed the day shift for James, which ran from approximately 10:00 a.m. to 5:00 p.m., seven days a week.  *Id.*  In this role, Rivera sold and directed the daytime sale of drugs, including heroin and cocaine base.  *Id.*  Moore—who went by the nicknames "Bang" and "Banger"—actively sold drugs with Rivera as part of the day shift.  *Id.* ¶¶ 24, 27-29, 34.  As probation noted, the evidence in this case demonstrates that those who sold drugs as part of this conspiracy "distributed at least one ounce of cocaine base per shift."  *Id.* ¶ 36.  Agents obtained evidence of Moore selling drugs on Makin Road on at least six separate dates:

- On September 8, 2017, around 3:27 p.m., Moore was captured on pole camera while engaged in multiple hand-to-hand narcotics transactions with various individuals, in and around a white van parked in front of 216 Makin Road.  *Id.* ¶ 21.

- On November 21, 2017, an agent observed Moore meet with Daniel James and Paul Rivera

---

[1] On November 5, 2020, Rivera pleaded guilty to conspiracy to distribute and possess with intent to distribute 280 grams or more of cocaine base (Count Two), and to possession of a machine gun (Count Twenty Four), pursuant to a Rule 11(c)(1)(C) plea agreement.  Dkt. 332 (Minute Order).  This Court sentenced Rivera to the agreed-upon term of 120 months in custody and five years of supervised release.  *Id.*

UNITED STATES' SENTENCING MEMO.         2
CR 19-00043-07 YGR

on the 200 block of Makin Road. *Id.* ¶ 23. Later that day, around 2:55 p.m., a CI arrived, and his body camera video captured Moore, Rivera, and others in/around the aforementioned white van. *Id.* ¶ 24. While speaking with the CI, Moore described the sale of "juice" (promethazine hydrocodone, a/k/a "syrup"), and noted how easy it was to obtain "juice" from doctors in Stockton. *Id.* Later, Moore directed codefendant Deshawn Lemons-Woodard to his (Moore-Williams's) nearby car and showed Lemons-Woodard the syrup he had for sale. *Id.* Also that afternoon, agents observed multiple people arrive in the area to buy drugs. *Id.* For example, agents watched one individual arrive on the block, approach Moore near the white van, then walk to Rivera (in a nearby car) and engage in a hand-to-hand transaction. *Id.*

In June of 2018, officers recovered Rivera's cell phone following a traffic collision. *Id.* ¶ 25. During a search of the phone, investigators found text messages between Rivera and Daniel James in which Rivera reported his drug sales to James on a near-daily basis. *Id.* ¶ 26. The coded language in these text messages indicated that Rivera advised James when supplies were running low—information James used to schedule his trips to Makin Road to resupply the dealers in his network. *Id.*

As part of the investigation, agents obtained a Title III order authorizing the interception of communications on two of Daniel James' phones between November 13, 2018 and December 13, 2018. *Id.* During this period, agents repeatedly intercepted communications between James's phone and Rivera's phone in which Moore—either directly or through Rivera—requested that James provide Moore with additional crack to sell. These intercepted communications offered further evidence of Moore's involvement in the drug trafficking conspiracy:

- On November 15, 2018, at approximately 2:55 p.m., Rivera sent a text message to James which stated, "Bang said could u [sic] bring a half." *Id.* ¶ 27. James replied, "Ok" and "tell him its [sic] 400 even." *Id.* Agents reported that, in this exchange, Rivera ordered a half-ounce of cocaine base from James on Moore's behalf, which James agreed to provide, stating that it would cost $400. *Id.*

- On November 19, 2018, at approximately 2:15 p.m., Moore used Rivera's phone to call James. *Id.* ¶ 28. During the call, Moore identified himself as "Bang" and asked James to provide him with "a half and a [sic] 8 ball." *Id.*[2] Agents reported that "8-ball" was slang for approximately one eighth of an ounce of cocaine base. *Id.*

- On December 6, 2018, at approximately 4:39 p.m., Rivera texted James, "Bang said could u bring him a half," to which James replied "ok." *Id.* ¶ 29.

---

[2] The PSR suggests that Moore said "half a [sic] '8-ball.'" PSR ¶ 28. However, the corresponding line sheets indicate that Moore told James, "instead a quarter to bring a half and a 8 ball [sic]." The government failed to clarify this distinction in responding to the Draft PSR.

UNITED STATES' SENTENCING MEMO.          3
CR 19-00043-07 YGR

- On December 9, 2018, at approximately 2:13 p.m., Rivera texted James, "Bang said could u [sic] bring out a half." *Id.*

Although Moore is only charged for his role in the drug trafficking conspiracy, his illicit activities in the area of Makin Road went beyond selling crack. For example, on January 31, 2018, Moore sold the CI a loaded .45 caliber handgun for $1,100. *Id*. ¶¶ 30-32, 37. At the time, Moore was hanging out with Rivera, James, and others near the same drug dealing spot on Makin Road, and went a short distance to retrieve the gun from his vehicle. *Id.* ¶ 37.

### III.     SENTENCING GUIDELINES CALCULATIONS

The government concurs with U.S. Probation that the applicable Guideline is U.S.S.G. § 2D1.1(a)(5) and (c)(7), and that Moore's Base Offense Level is 26. PSR ¶ 43. U.S.S.G. § 2D1.1(a)(5) and (c)(7) applies where the offense—here, conspiracy to distribute cocaine base—involved at least 112 grams (roughly four ounces) of cocaine base. In estimating drug quantities, courts are required to "err on the side of caution." *United States v. Scheele*, 231 F.3d 492 (9th Cir. 2000). The government submits that, in light of the evidence described above, it is indeed cautious for this Court to find Moore responsible for at least 112 grams of cocaine base.

According to the PSR, Moore's open plea paperwork only contemplates him pleading to "at least 28 grams of cocaine base," which is the bare minimum for a guilty plea to Count Two. *Id*. ¶ 43, n. 1. However, as discussed above, the evidence in this case demonstrates that Moore conspired to sell *considerably* more than one ounce of crack. Between November 15, 2018 and December 9, 2018, agents intercepted communications on four separate dates in which Moore was requesting *at least* a half-ounce of crack, and requested an additional eight on one of the dates. In other words, over the course of four separate afternoons in this 24 day period alone, Moore requested a total of more than two ounces of crack to sell. Notably, each of these requests was made during the afternoon hours, the earliest being 2:13 p.m, and the latest at 4:39 p.m. This suggests that, each time, Moore had already exhausted his supply from earlier in the day. And, we know that his involvement in the conspiracy spanned far beyond than this 24 day period. On at least two separate dates—September 8, 2017 and November 21, 2017—Moore was captured on video either personally engaged in hand-to-hand transactions or

alongside Paul Rivera, a co-conspirator, as Rivera sold crack.[3] To reach approximately 112 grams across six days, this Court need only find that, on average, Moore was responsible for approximately 18.66 grams of crack each of the six days. In the government's view, this is a very conservative estimate.

The government also agrees with U.S. Probation that Moore's Total Offense Level is 25. *Id.* ¶ 52. This Total Offense Level accounts for a two-level increase pursuant to U.S.S.G. § 2D1.1(b)(1) because Moore possessed a firearm in connection with the offense, PSR ¶ 44, and a three-level reduction under U.S.S.G. §3E1.1(a)-(b) for acceptance of responsibility. *Id.* ¶ 50-51.

Moore's Criminal History Category is III. *Id.* ¶ 61. An Offense Level of 25 in Criminal History Category III yields an advisory sentencing range of 70 to 87 months.

**IV.   SECTION 3553(a) FACTORS**

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, protect the public from the defendant, and rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The statute sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991. The Guidelines should be the starting point and the initial benchmark. *Gall v. United States*, 552 U.S. 38, 49 (2007). Though the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007).

The nature and circumstances of Moore's conduct in this case justify a low-end Guidelines sentence of 70 months. As described above, Moore actively participated in a large-scale drug trafficking

---

[3] Presumably, Moore's Guidelines *could be* considerably higher if one were to factor in the additional drug quantities dealt by his co-conspirators.

1 conspiracy, and did so for at least fifteen months. Although the Superseding Indictment only charges
2 Moore with (B)-weight conspiracy, the quantities he and his associates sold on that block are staggering:
3 over a dozen kilograms of crack cocaine in a 15-month period, sold a few tenths of a gram at a time.
4 That represents between 35,000 and 40,000 hand-to-hand transactions, approximately one every 15
5 minutes of every day and night, rain or shine, all concentrated in a single East-Oakland neighborhood.
6 Moore participated in the destruction of a community.

7 As to the history and characteristics of the defendant, Moore's criminal history dates back nearly
8 a decade. He has an extensive juvenile history, including prior adjudications for serious offenses, such
9 as residential burglary. He was on probation when he committed the offense charged in this case. The
10 day before he was arrested in this case, he fled from the California Highway Patrol in a car in the
11 Eastern District of California, even though his license was revoked for four separate failures to appear
12 on traffic-related matters and he should not have been driving at all. He was arrested in this case when
13 Oakland police caught him and three others attempting to burglarize an auto shop in Oakland – in that
14 incident as well, he attempted to flee. One would think that narrowly escaping capture in the Eastern
15 District would dissuade him from joining in a burglary attempt the very next night, but it did not.
16 Despite all of this, Moore was still chance on Pretrial Release. Yet he squandered the opportunity,
17 repeatedly violating the conditions of his release before being remanded in just two months.

18 A significant period of incarceration is also necessary to promote respect for the law and to
19 protect the public from further crimes committed by Moore. His conduct in this case reflects either an
20 inability to conform his behavior within the confines of the law, an apparent indifference to the law, or
21 both. The proposed sentence accounts for Moore's ongoing criminality and the seriousness of his
22 conduct in this case. Moreover, the strict conditions of supervised release attendant to this sentence are
23 necessary to disincentivize future criminality by Moore.

24 ### V. CONCLUSION

25 In consideration of the nature and circumstances of the present offense, the defendant's history
26 and characteristics, and the goals of sentencing, the United States respectfully requests that the Court
27 sentence Moore to a low-end Guidelines term of 70 month' imprisonment and four years of supervised
28

UNITED STATES' SENTENCING MEMO.        6
CR 19-00043-07 YGR

release with an expanded suspicionless search condition, as well as each of the terms and conditions recommended by U.S. Probation.

DATED: January 29, 2021

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

  /s/
SLOAN HEFFRON
FRANK J. RIEBLI
Assistant United States Attorneys

UNITED STATES' SENTENCING MEMO.    7
CR 19-00043-07 YGR